Gilson *v.* Wood.

---

EDWARD L. GILSON, Plaintiff in Error, *v.* WILLIAM WOOD, Defendant in Error.

ERROR TO LA SALLE COUNTY COURT.

Possession of personal property is evidence of ownership, and the possessor may recover in trespass against the person who takes it from him, unless such person proves the property to be his own.

Each party engaged in the commission of a joint trespass is liable for the acts of all.

In trespass, the measure of damages is what the property was worth when taken.

It is not error to allow the statements of an agent, made at the time of the sale of personal property, to be given in evidence.

THIS was an action of trespass to personal property, commenced in a justice's court. On the trial before the justice, a judgment was rendered against the defendant in error for costs, and an appeal was taken therefrom to the La Salle County Court. The cause came on to be tried in the County Court, at the December term, thereof, A. D. 1857, before J. C. CHAMPLIN, Judge of said court, and a jury, and a verdict had for the plaintiff for $68 damages, and judgment entered thereon; which said judgment, it is claimed, is erroneous.

The plaintiff, to maintain the issue on his part, had sworn, as a witness, *Susan Davis,* who testified, that last February she was with her brother-in-law, the plaintiff, at his house; that de-

Gilson v. Wood.

fendant came to the house and knocked at the door; that plaintiff was not at home; that Edward Gilson and Lasher took a harness out of the stable occupied by James Dixon, and a plow, and removed them with a wagon. Plaintiff claimed to own the plow, wagon and harness. The wagon was driven away by Lasher. Gilson appeared to be directing the taking away of the property.

On her cross-examination, the witness testified that Lasher occupied the premises together with one James Dixon and plaintiff. That they all lived in one house, occupying different parts of it, and used the barn and barnyard together. That for the portion of the premises, occupied by plaintiff and Dixon, they were to pay, for the use, *one-third of the crops.* That witness went to her brother-in-law's house from the 6th to the 10th of February, 1857, a few days before Gilson took away the property.

*James Dixon,* a witness called and sworn for the plaintiff, testified, that he was present when defendant came and took away the property, viz.: one two-horse plow, one corn plow, one shovel plow, one wagon, one double harness. That witness rented the farm with plaintiff, who is his brother-in-law, from defendant and George W. Gilson, together. Witness supposed Edward Gilson was agent for George W. Gilson; were to pay one-third of crops for use of premises, to work on shares.

Cross-examined. When we went into possession, Lasher was living on the same farm, and occupying part, and had possession thereof. When we went into possession, Lasher had the personal property in his possession, and claimed to hold the same and the premises occupied by him, under defendant. (Objected to by defendant. Objection overruled.) Lasher retained possession of the same until about a month before this suit was brought, when Ransom came upon the premises and sold the property above named to the plaintiff.

The direct examination of the witness was here resumed by the plaintiff's attorney asking the following question: did Ransom state for whom he was selling the property at the time he sold the same to plaintiff? Which question was objected to by defendant, and objection overruled by the court, and to which ruling the defendant excepted. The witness answered, that Ransom, when he went to sell the property, stated that he did so as the agent of Mrs. Gilson, who was the widow of George W. Gilson, deceased. There was, also, evidence tending to show that Lasher paid rent for the premises so occupied by him, to Mrs. Gilson, after the decease of George W. Gilson.

CHUMASERO & ELDREDGE, for Plaintiff in Error.

C. BLANCHARD, for Defendant in Error.

CATON, C. J. This was an action of trespass to personal property, which, at the time of his death, belonged to George W. Gilson, deceased, and was at that time on a farm of the deceased, occupied by the plaintiff below, as tenant. Some time after the decease of Gilson, and, say a month, before the trespass complained of was committed, one Ransom, claiming to be the agent of Mrs. Gilson, the widow, sold the property to the plaintiff below. While the property was thus situated, the defendant below, with others, took and carried away the property. The following instructions, given for the plaintiff below, were excepted to:

2. "The possession of personal property is *primâ facie* evidence of ownership, and unless the defendant has proved that the goods and chattels so taken from the possession of the plaintiff and carried away by the defendant (if such were taken and carried away), was the property of the defendant, or of some person other than the plaintiff, they will find for the plaintiff."

3. "If the jury believe, from the evidence, that other parties were assisting said Gilson, the defendant, in taking and carrying away said goods and chattels (if such were taken and carried away), then the law is, that each party engaged in the commission of a joint trespass is liable for the acts of all so trespassing."

7. "If the jury find for the plaintiff, the measure of damages is, what the property is proven to have been worth at the time it was taken and carried away by the defendant."

These instructions assert the most familiar principles of law, and we do not deem it necessary to enter into any discussion to vindicate their propriety.

The defendant asked the court to instruct the jury as follows:

4th. "If the jury find that the plaintiff occupied the farm under an agreement with George W. Gilson, by which he was to receive one-third of the crops for working the farm, that constitutes the relation of master and servant between George W. Gilson and the plaintiff, and the possession of the plaintiff under such circumstances was the possession of George W. Gilson, during his lifetime; and after his death the possession of his heirs, devisees or legal representatives. And the fact of the plaintiff's being in the occupancy of the premises under such circumstances, is, of itself, no evidence of title to the personal property on the premises during such time." Which instruction the judge qualified by adding as follows: "But, on the contrary, it is no evidence that the personal property in question was not the property of the plaintiff." To this qualification the defendant excepted. We are entirely unable to see the least objection to this qualification. How the circumstances alluded to could tend to prove that the property did not, at the time of the trespass,

belong to the plaintiff, or, at least, was not in his possession, which is a sufficient ownership to maintain this action against a stranger, we are unadvised.   The qualification was very proper.

The court refused this instruction asked by the defendant: " If the jury believe, from the evidence, that Ransom sold the property in dispute to plaintiff, as the agent of Mrs. Gilson, who was the widow of George W. Gilson, they must find for the defendant, unless it be shown also that the property was the property of George W. Gilson, and that she had the right to make such sale as the executrix or administratrix of George W. Gilson, or that she was the owner of the property."   This decision was also excepted to.   This was, certainly, properly refused. It was no matter whether the plaintiff got a good title from the agent of Mrs. Gilson or not.   His possession was sufficient as against a wrong doer, as the defendant appears to have been, or at least as he might have been but for any thing in this instruction.   The evidence of Dixon tends to show that the defendant had something to do with the renting of the farm to the plaintiff, in connection with, and as the agent of, George W. Gilson. But that gave him no right· to interfere subsequently, and especially after the death of George W. Gilson.

There was no error in allowing Ransom's statements, that he was the agent of Mrs. Gilson, which were made at the time of the sale, and as a part of that sale itself, to be given in evidence. We find no error in this record, and the judgment must be affirmed.

*Judgment affirmed.*